# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

GAYLEN D. COMBS,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

        Defendant.

No. C06-4048-MWB

**SUPPLEMENTAL
REPORT AND RECOMMENDATION**

---

## I. INTRODUCTION

On November 20, 2003, the plaintiff Gaylen D. Combs protectively filed applications for disability insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*[2]  Combs alleged he became disabled on September 30, 2002, due to back pain and an artery replacement in his leg. (*See* R. 110) His applications were denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ"), during which Combs amended his alleged disability onset date to January 4, 2003. (R. 427)

---

[1] This case was filed originally against Jo Anne B. Barnhart, who was at that time Commissioner of the Social Security Administration ("SSA"). The court previously substituted Linda S. McMahon as the defendant in this action when she became Acting Commissioner of the SSA. (Doc. No. 17) On February 12, 2007, Michael J. Astrue became Commissioner of the SSA, and he hereby is substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)(1).

[2] The ALJ noted Combs had filed a previous application on January 30, 2003, alleging disability since August 26, 1996. The application was denied initially, and Combs did not pursue his application further. The ALJ declined to exercise his discretion to reopen the application as allowed by 20 C.F.R. §§ 404.988(a) and 416.1488(a), making the prior denial a final and binding determination of the Commissioner. As a result, the ALJ found Combs's current application to be "limited to the period of time beginning November 20, 2003 [i.e., the date of Combs's current application], and continuing through the date of [the ALJ's] decision [i.e., November 22, 2005]." (R. 17)

On November 22, 2005, the ALJ found Combs was not disabled at any time through the date of his decision. The ALJ found Combs has severe impairments consisting of low back pain status post fusion of L5-S1, peripheral vascular disease status post bilateral bypass grafting, hypertension, coronary artery disease, and a history of depression and alcohol abuse. (R. 18) However, the ALJ further found these impairments, singly or in combination, did not meet the Listing requirements. (R. 18) Combs appealed the ALJ's ruling, and on March 21, 2006, the Appeal Council of the Social Security Administration denied his request for review, making the ALJ's decision the final decision of the Commissioner.

Combs filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 5) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of Combs's claim. Combs filed a brief supporting his claim on November 17, 2006. (Doc. No. 13)

On January 11, 2007, the Commissioner filed a motion asking the court to enter final judgment pursuant to sentence four of 42 U.S.C. § 402(g), reversing and remanding the case for further consideration. (Doc. No. 15) In the motion, the Commissioner indicated Combs had filed a subsequent claim for benefits which the Appeals Council would consider "to determine whether there is new and material evidence related to the application at issue in this case." (*Id.*, p. 5 of 9)

On January 22, 2007, Combs filed a response to the Commissioner's motion, indicating he did not object to the entry of judgment reversing and remanding this case for further proceedings. (Doc. No. 16)

The undersigned reviewed the administrative record, and on January 22, 2007, the undersigned entered a Report and Recommendation recommending the Commissioner's

unopposed motion for remand be granted. (Doc. No. 17) On May 2, 2007, Judge Mark W. Bennett entered an order (Doc. No. 18) rejecting the undersigned's recommendation, and remanding the case to the undersigned for "a substantive Report and Recommendation." (*Id.*, p. 6) Pursuant to Judge Bennett's order, a briefing schedule was issued, and Combs filed a brief on the merits on June 2, 2007. (Doc. No. 20) The Commissioner filed a responsive brief on June 19, 2007. (Doc. No. 21) In compliance with Judge Bennett's order, the undersigned now offers the following report and recommended disposition of Combs's claim for benefits.

## II. REVIEW OF THE ADMINISTRATIVE RECORD

### 1. Introductory facts and Combs's hearing testimony

Combs had a hearing before ALJ John P. Johnson on May 4, 2005, in Sioux City, Iowa. (R. 423-61) Combs was represented at the hearing by attorney Warren Reimer. Combs was fifty-three years old at the time of the hearing. He was 5'7" tall, weighed 182 pounds, and smoked five to ten cigarettes per day. He had been divorced from his second wife for about three years. (R. 427-28, 453) At the time of the hearing, he was living with his girlfriend in an apartment. He received about $150 per month in food stamps, and had no other income. He received medication assistance through Siouxland Mental Health. (R. 452)

Combs finished the ninth grade in school,[3] and did not get a GED or complete other coursework. He worked for a couple of weeks in 2003 through temporary agencies, but according to Combs, once the agencies found out about his back problems, they would not

---

[3]In the brief filed on Combs's behalf, his attorney states: "In his testimony, the plaintiff stated that he has completed the 12th grade in school, but did not have enough credits to graduate to account for his formal education. (Tr. 399-400)" This statement is in error; Combs testified he completed only the ninth grade in school. (R. 428) Furthermore, pages 399-400 of the administrative record, cited in the brief, contain a pathology report and a report from an angiogram, rather than any support for the assertion that Combs completed the twelfth grade.

3

send him out anymore on jobs. (R. 428-30, 451) His last full-time work was in 2002, when he worked for John Morrell as a parts runner. He worked for John Morrell for thirty-one years, and did a variety of different jobs while he was with the company. In his most recent position, he picked up parts, motors, and other items and delivered them to and from customers. He indicated the work required very heavy lifting at times, from fifty to 100 pounds, and was "very physical." (R. 428-30, 445) Combs has problems reading, and he sometimes had difficulty reading the addresses where he was supposed to make pickups or deliveries. He stated he "got lost quite a few times." (R. 446; *see* R. 435) Other jobs he performed for John Morrell included laundry worker, which required him to stand most of the time; utility work in the packing plant; and actually working on the floor in the packing plant. (R. 430-31) In the laundry job, he washed uniforms and gloves. The job required him to lift seventy to eighty pounds regularly. In the utility worker job, he lifted anywhere from thirty to eighty pounds, depending on what he was doing. (R. 446)

Combs stated he would be unable to return to any of his past work at John Morrell because it was "too physical . . . just getting in and out of the truck, going up and down the stairs, lifting boxes [and] moving boxes[.]" (R. 432) He stated he injured his back "the second time" (R. 430) on the job, and he had to stop working due to back pain. (R. 432) His job at John Morrell ended after he fell at work. Combs stated he was suspended indefinitely and then "they just let me go." (R. 433) He stated, "In my opinion, I worked too long and I was broke down . . . and they just didn't want me there." (*Id.*) At some point during Combs's tenure at John Morrell, he worked under restrictions that included a standing limitation of forty-five to sixty minutes, and a lifting limitation of twenty pounds occasionally and five pounds frequently. (R. 450) The hearing record is not clear as to when these restrictions were imposed.

4

Combs stated he has had back surgery twice, most recently in 1998 or 1999, and he has constant pain in his lower back. The pain gets worse if he sits for too long or walks any distance. He gets up in the morning and makes breakfast, and then has to sit down or sometimes even lie down. (R. 432, 446-47) He has no difficulty reaching his arms above his head, but he is unable to twist to lift. (R. 450) Oftentimes, the pain that begins in the center of his low back shoots down his legs. He estimated this occurs about five days per week, and up to three or four times a day. The condition worsens with activity. (R. 441-42)

Combs has developed blood clots in his legs, and he stated he has had six major surgeries on his legs, including artery bypasses on both legs. His first leg surgery was in November 2004, on his right leg. Combs stated he was hospitalized three times in March 2005, because his back "gave out" and his legs "just started clogging up." (R. 433-34) In addition, he stated his feet hurt constantly, and they were hurting during the ALJ hearing. He stated he awakens two or three times during the night with foot cramps, and he has to get up and stand/walk to stop the cramping. Before his foot and leg problems began, he could walk seven or eight blocks before he had to sit down and rest, but now he is unable to stand for very long, or walk more than four or five blocks at a time without his legs cramping up. (R. 433-35, 437)

Combs indicated he usually arises at 5:30 to 6:00 in the morning. He tries to walk the cramps out of his legs and back, and then he has a cup of coffee, watches the morning news or one of the morning television shows, and takes a shower. He does not read or write very well, and he does not understand most of what he is able to read, so he does not read a newspaper. He stated the majority of his day is spend "setting out back and watching nature or watching the cars go by." (R. 435) He and his girlfriend play cards frequently. His domestic chores are limited to taking out the garbage occasionally. (R. 435-36, 445) He stated he has no difficulty concentrating and no memory problems.

5

(R. 450)  He had no problems getting along with his coworkers at John Morrell, and he gets along well with his family, neighbors, and acquaintances.  (R. 451)  He stated he is "a very nervous person," but he generally likes himself and the people around him.  (*Id.*)

Combs stated he can stand for fifteen to forty-five minutes at a time, until his legs start throbbing, and then he has to sit down and elevate his legs.  His ankles and feet swell if he stands for too long.  After he sits with his legs elevated for about fifteen minutes, then he can stand again.  He can sit in a straight-backed chair for thirty to forty-five minutes at a time before he has to stand up and walk around or elevate his legs.  He indicated his leg problems are "getting worse and worse everyday."  (R. 437)  Combs estimated he elevates his legs six or seven times a day, for fifteen to forty-five minutes at a time.  He elevates his legs to a level parallel with the floor, in either a sitting or reclining position.  (R. 437-38)

Combs stated he is unable to bend over and tie his shoes without pain, and he avoids bending at the waist as much as possible.  He is able to get down and squat, but then he has difficulty getting back up.  He stated he avoids baths because he has difficulty getting out of the bathtub.  He can kneel down to the floor and get back up, but not without pain. He is unable to crawl because the pain is too severe.  He can climb a short flight of stairs, but again, it causes him pain.  He stated he tries to avoid stairs; however, he then stated that at times, he may go up and down the ten steps to his basement two to three times in a day.  (R. 438-40, 452-53)

For his medical treatment, Combs sees Randy Guerdet, P.A.C., at Siouxland Community Health Center.  At the time of the ALJ hearing, he was seeing Mr. Guerdet weekly for a blood test while doctors were regulating Combs's Coumadin dosage.  He sees a surgeon, Joseph Morris, M.D., for his leg problems.  (R. 449-50)

Combs stated he seldom leaves his house during the wintertime because the cold causes his back to hurt.  During the summer, he goes outside and sits on the patio or walks

6

around his backyard. He stated his girlfriend does all the shopping. He may accompany her, but he sits down and waits while she shops. (R. 440-41)

Combs indicated he has been to treatment for alcoholism on more than one occasion. He went into treatment in January 2003. Since then, he estimated he has "had a couple beers" at his brother's house about once a month. He indicated he has not been intoxicated since January 2003. (R. 442-43, 449) He also stated he does not take "street drugs," and he is "very against them." (R. 449)

Combs described an incident that occurred in February 2005, when he suffered a fall. He stated he was walking to his sister's house at about 9:00 or 9:30 in the morning. It was a cold day, and "all of a sudden [his] leg just quit working and [he] fell right on [his] face." (R. 443) Combs stated that prior to the date of the fall, it had been three to four weeks since he had had a drink. (*Id.*)

In April 2005, one week before the ALJ hearing, Combs started a relapse prevention treatment program at Jackson Recovery Center. (R. 442-43; *see* R. 412-18) His entry into the program appears to have been the result of his brief commitment to the psychiatric ward at Mercy Hospital, an action that occurred after his sister and his daughter reported that Combs was "violent" and "crazy." (R. 448) He was in the hospital for two days. After his release, he was required to appear at the Sheriff's office twice daily for a breathalyzer test until he started the program at Jackson Recovery. (*Id.*)

Combs does not engage in any hobbies or activities. He stated that before his leg and back problems, he was very active and enjoyed bowling, fishing, and playing softball. (R. 444) His driver's license expired in April 2005, and he did not renew his license because he could not afford it. A friend drives him wherever he needs to go. (*Id.*)

Although Combs cannot read or write well, he is able to add and subtract without difficulty and he can handle money. He makes purchases and knows how much change he should get back. (R. 445)

Case 5:06-cv-04048-MWB   Document 23   Filed 09/04/07   Page 7 of 28

## 2.    *Combs's medical history*

In Combs's brief (Doc. No. 20), he adopts, nearly word-for-word, the ALJ's summary of his medical history.  (*See* Doc. No. 20, pp. 2-9)  The undersigned finds the ALJ reviewed Combs's medical history thoroughly, and a only a summary of Combs's medical history is required here.

The record indicates Combs has had a significant problem with alcoholism for over twenty-five years.  He has sought treatment for alcoholism more than once.  Despite his claim at the ALJ hearing that he is remaining "sober," the record indicates he continues to drink from six to twelve beers weekly.

Combs has had several vascular surgeries on his legs.  He has had ongoing and repeated vascular problems with his legs, some of which, according to Comb's surgeon Dr. Morris, could be due to the fact that Combs has continued to smoke despite having been warned it could affect his vascular status adversely.  The record indicates Combs has attempted to stop smoking on occasion, and he has, in fact, decreased his tobacco consumption; however, at the time of the ALJ hearing, he continued to smoke up to ten cigarettes per day.

Combs has suffered two back injuries, at least one of which was an on-the-job injury, and he has undergone two back surgeries.  He testified he has hardware in his back, and this is confirmed by x-rays.  (*See* R. 286, indicating "Stable appearance interdiscal cage prosthesis L5-S1.")  He complains of ongoing pain in his low back, often radiating into his legs and down to his feet, and daily leg pain.  He takes Ibuprofen 600 mg as needed for pain, and occasionally he also takes Hydrocodone for pain.  (*See* R. 140) More recently, Neurontin and Ultracet have been prescribed for his pain.  (R. 337)  He is on two different blood pressure medications and a blood thinner.  (R. 140)  He also takes one aspirin daily, having experienced a myocardial infarction in the past.

8

Two State agency consultants examined Combs, reaching similar conclusions regarding his ranges of motion. On April 9, 2003, Combs was examined by Craig Bainbridge, M.D., who noted Combs had a slightly decreased range of motion in his lumbar spine, and a "stiff gait with straight back." (R. 268) Combs exhibited positive straight leg raising in both legs, and no sensory or reflex loss on either side. (*Id.*) Dr. Bainbridge diagnosed Combs with low back pain status post surgery, status post left femoropopliteal bypass, myocardial infarction, history of hypertension, history of alcohol abuse, and tobacco abuse. (R. 266) Dr. Bainbridge apparently offered no opinion regarding Combs's functional capacity.

X-rays of Combs's back taken on June 3, 2003, showed mildly increased disc space narrowing at L4-5 "with vacuum disc"; "[m]ild multilevel marginal osteophytes"; "[m]ild disc space narrowing [at] L1-2, L2-3 and L3-4"; and "[i]ncreased facet arthropathy [at] L4-5." (R. 286)

On January 27, 2004, Eileen M. Barto, M.D. did a repeat disability examination at the request of the State agency. (R. 301-06) Dr. Barto noted Combs's blood pressure was elevated. (R. 302) She found no abnormalities in Combs's upper extremities as to strength, muscle tone, and range of motion. (R. 303) She noted two separate surgical scars over Combs's lumbar spine area, and "some tenderness with palpation of the low back." (*Id.*) She also noted straight-leg-raising was positive. (*Id.*) She further noted only slightly reduced strength in Combs's left quadriceps and hamstring as compared to the right, good deep tendon reflexes, and no evidence of muscular tone loss, atrophic change, spasm, joint effusion, skin discoloration, edema, or clubbing in Combs's lower extremities. (*Id.*) Combs exhibited decreased sensation to pinprick of both lower extremities. He was able to heel-walk, but had difficulty toe walking due to leg pain. He also was unable to squat due to leg pain. His tandem gait was noted to be "slow but otherwise normal." (*Id.*)

9

On objective testing, Dr. Barto found Combs to have mildly deceased ranges of motion on hip flexion and rotation in both hips; moderately decreased ranges of flexion and extension of his lumbar spine; and positive straight leg raising. (R. 306) She indicated Combs had a "slowed gait" and required "assistive devices." (*Id.*) She found that Combs had exhibit good effort in his testing. (*Id.*)

Dr. Barto's assessment of Combs included "[l]ow back pain and radiculopathy symptoms into the lower extremities"; "[h]istory of MI"; and "[h]ypertension, uncontrolled." (R. 304) She made the following recommendations:

> In regards to Mr. Combs' functional capacity, he is very limited due to his history of back surgeries and persistent low back pain and lower extremity pain. He should not be performing any lifting or carrying, climbing, stooping, kneeling or crawling. Functions involving standing, moving about, walking and sitting could be performed but he would need to change positions frequently. I would have no concerns in regard to ability to handle objects, seeing, hearing, or speaking. Traveling short distances would be possible but certainly long distances would not be recommended. He should not be exposed to hazards in the work environment.
>
> I do agree that Mr. Combs is virtually unemployable at this point. I am quite concerned about his status in regard to his previous MI and current hypertension and inability to afford medications. Also he has significant depression that is currently not being treated. I would highly recommend Mr. Combs for disability.

(*Id.*)

On January 16, 2004, Michael Baker, Ph.D. performed a psychodiagnostic mental status exam of Combs at the request of the State agency. (R. 297-300) Dr. Baker noted Combs walked "at a very slow pace entering the room." Combs had good hygiene and his appearance was appropriate. He exhibited common-sense judgment, but his "[i]nsight seemed rather unaware." (R. 300) He exhibited a low fund of knowledge, had difficulty

10

with arithmetical questions, and exhibited intelligence the doctor estimated to be "in the low average range." (*Id.*) He exhibited difficulty maintaining attention due to anxiety, and he was "described as distractible." (*Id.*)

Combs indicated his energy level was low and he wished he "could do more." (R. 299) When asked to describe his self-esteem, he responded, "I guess I feel like I'm fine because I have friends and good brothers." (*Id.*) He described his mood as "down" and "a little depressed," but intimated that visiting his children helped his mood. He stated he sometimes felt on the verge of tears, "but then mostly I'd be spacing off, just looking and thinking." (*Id.*) Dr. Baker found Combs's thought process to be "without looseness and generally goal-directed," and he detected no evidence that Combs had delusional thought. He noted Combs's "[a]ffect appeared blunted at times." (*Id.*)

Dr. Baker opined Combs would have difficulty completing tasks "of a highly complex nature" due to difficulties understanding and remembering instructions. (R. 300) He found Combs's concentration and attention to be "affected for carrying out instructions." (*Id.*) He opined Combs would respond appropriately to changes in the workplace, and he would interact with others appropriately, although perhaps somewhat anxiously and in an "avoidant manner . . . beyond close family relationships." (*Id.*) He diagnosed Combs with Depressive Disorder not otherwise specified, Alcohol Dependence in Early Full Remission, Learning Disorder not otherwise specified, and Avoidant Personality Traits. He assessed Combs's Global Assessment of Functioning (GAF) as 45, indicating "serious symptoms or serious difficulty in social, occupational, or school functioning." (*Id.*; R. 21, citing American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994), Text Revision at 34 (2000))

Combs continued to receive conservative treatment for his ongoing back pain and leg pain. He saw his back surgeon, Ralph Reeder, M.D., for followup in September 2004. Dr. Reeder noted "palpable tenderness with light palpation to the lower back." (R. 337)

11

Combs exhibited diminished reflexes in his lower extremities; mildly diminished pulses in the right leg; and "slow but acceptable capillary fill with some skin changes consistent with peripheral vascular disease." (*Id.*) He noted Combs "does walk with a marked limp." (*Id.*) X-rays showed some degenerative changes occurring at the level above Combs's prior fusion.

Dr. Reeder indicated multiple possible sources existed for Combs's low back and leg discomfort, "including polyneuropathy perhaps secondary to peripheral vascular disease or cigarette smoking, the possibility of residual neuropathy from previous compressions, and potential for additional degenerative changes of the spine with nerve root compression." (*Id.*) He noted Combs had no insurance to cover additional diagnostic testing. He advised conservative treatment, and he gave Combs samples of Neurontin and Ultracet, advising him to investigate medication assistance programs through the community health center if the medications relieved his symptoms. He noted, "The intent is to undergo additional diagnostic procedures hopefully once he has obtained insurance." (*Id.*)

Combs continued to receive conservative treatment for his back and leg symptoms from a physician's assistant in Dr. Reeder's office. In March 2005, he underwent a thrombectomy to repair an occlusion of the graft in his right leg.

### 3. *Vocational expert's testimony*

Vocational Expert ("VE") William V. Tucker reviewed the record and Combs's hearing testimony, and prepared a chart describing Combs's past work activity, noting that all of Combs's past relevant work was considered "heavy" work as Combs had performed it. (*See* R. 142, 455)

The ALJ asked the VE the following hypothetical question:

> My first assume [sic] we have an individual who's 53
> years old, he was 50 years old as of the alleged onset date of

12

disability, no that's been changed. He's a male, he has a limited education and his past relevant work as you have indicated on [the summary] and he has the following impairments. He is status post a fusion of the 5th lumbar and 1st sacral level with complaints of low back pain, peripheral vascular disease, status post bypass grafting bilaterally, hypertension, coronary artery disease, with a history of depression and alcohol abuse and as a result of a combination of those impairments he has the residual functional capacity as follows: he cannot lift more than 20 pounds, routinely lift 10 pounds, with standing or walking of 6 hours out of an 8 hour day, sitting for 6 hours out of an 8 hour day, with only occasional bending, stooping, squatting, kneeling, crawling or climbing. He is not able to do very complex or technical work, but is able to do more than simple routine, repetitive work that does not require constant close attention to detail or use of independent judgement for decision making. He does require occasional supervision. He should not work at more than a regular pace and that's using three speeds of pace being fast, regular and slow and he should not work at more than a moderate level of stress. Would this individual be able to perform any job he previously worked at either as he performed it or as it is generally performed within the national economy?

(R. 456) The VE responded that the hypothetical individual would be unable to return to the exertional level of any of Combs's past relevant work. (R. 457) In addition, because all of Combs's past work was unskilled, there would be no transferable skills to other jobs.

However, the VE stated the individual would be able to "perform a wide range of unskilled work activity at the light level," including, for example, inspector and hand packager, laundry folder, or wire worker. (*Id.*)

The ALJ next asked the VE the following hypothetical question:

The next hypothetical would be an individual at the same age, sex, education, past relevant work and impairments as previously specified and this would be an individual who'd have the residual functional capacity as follows: this individual

could not lift more than 20 to 30 pounds, routinely lift 5 to 10 pounds, with standing of one quarter to three quarters hour at a time, sitting of one quarter to three quarters hour at a time and walking of seven to eight blocks at a time, with only occasionally bending, stooping, twisting to left, squat or kneel, no crawling and only occasional climbing. This individual is able to do only simple routine, repetitive work that does not rely on written material. He should, does need occasional supervision, he should not work at more than a regular pace or more than a moderate level of stress. I assume this individual could not return to past relevant work, transfer required work skills are perform [sic], would that be correct?

(R. 457-58) The VE agreed the hypothetical individual would be unable to perform any of Combs's past relevant work. In addition, the individual "would be limited to those jobs where he could alternate sitting and standing, which would eliminate the laundry folder job but would include the wire worker and hand packager jobs. (R. 458)

Combs's attorney asked the VE to consider whether his answer to the ALJ's first hypothetical question would change with the addition of the following limitations:

that such a person would have moderate limitations in the ability to understand, remember and carry out detailed processes, moderate limitation in the ability to maintain attention and concentration for long periods of time, moderate limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and moderate limitations in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms[.]

(R. 459) The VE stated his response to the first hypothetical would not change if those limitations were added. He indicated moderate limitations ordinarily do not limit an individual's ability to perform unskilled, entry-level type work. (*Id.*) However, he noted the combination of limitations could affect the individual's ability to maintain employment. The VE stated that at some point, the accumulation of enough limitations will interfere with an individual's ability to maintain employment. (*Id.*)

14

Combs's attorney next asked the VE to consider someone of Combs's age, educational background, and prior work experience, who is unable to lift, stoop, kneel, crawl, or work around unprotected heights and dangerous, moving machinery, and who would have to change positions frequently. The VE indicated such an individual would be unable to perform any of Combs's past work. (R. 459-60) He stated, "The frequent need to change positions and no lifting, I think effectively erodes any kind of job base." (R. 460)

Combs's attorney also asked the VE to consider someone of Combs's age, educational background, and prior work experience, who has the limitations described by Combs in his testimony; i.e., the "need to lie down for six to seven times a day for 15 to 45 minutes to elevate his legs, limiting his standing to 15 to 45 minutes, his sitting to 15 to 45 minutes and his lifting to five to ten pounds." (*Id.*) The VE indicated such an individual would be unable to work, noting "the need to elevate his legs as frequently as recited in the hypothetical would not be tolerated on any kind of employment situation." (*Id.*)

### 4.    *The ALJ's decision*

The ALJ found Combs had not engaged in substantial gainful activity since his amended alleged disability onset date of January 4, 2003. (R. 17-18) He found Combs to have severe impairments consisting of "status post fusion of L5-S1 with complaints of low back pain, peripheral vascular disease status post bilateral bypass grafting, hypertension, coronary artery disease, [and] a history of depression and alcohol abuse." (R. 18) However, he found these impairments, either singly or in combination, do not meet the Listing level of severity. (*Id.*; *see* R. 18-22)

The ALJ further found Combs has mental impairments as follows:

> As a result of the claimant's mental impairments *without* the
> use of alcohol, he has: mild restriction of his activities of daily

15

living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and he has experienced no episodes of decompensation. When considering the claimant's mental impairments *with* the abuse of alcohol, the claimant has mild restriction of his activities of daily living; moderate restriction in maintaining social functioning, moderate restriction in maintaining concentration, persistence and pace; and he has experienced one to two episodes of decompensation. The evidence of record does not establish sufficient imitations to satisfy the "C" criteria.

(*Id.*; emphasis added)

The ALJ noted Combs's sister had supplied a statement indicating Combs gave her rides to doctor appointments, drove daily, performed light household duties such as taking out the trash and washing the car, and performed self-care. He further noted Combs had testified he experienced no side effects from his medications, he continued to drink socially with his brother, and he had not renewed his driver's license due to lack of funds. The ALJ found that Combs had "alleged significant limitations that are not supported by the medical record," noting none of Combs's medical providers had given him any limitations or advised him not to work. He found Combs's activities of daily living did not support his claim that he is in constant pain. (R. 22) He also noted Combs "has continued to drink, which is material in this matter." (R. 23) For these reasons, the ALJ found Combs's subjective complaints not to be credible generally, and the ALJ gave Combs's complaints "little weight." (*Id.*)

The ALJ found Combs to have the following residual functional capacity:

[T]he claimant retains the residual functional capacity to perform the mental and physical requirements of work with the following limitations: occasionally lift 20 pounds and repeatedly lift ten pounds, stand/walk six hours in an eight hour day, sit six hours in an eight hour day and occasionally bend, stoop, squat, kneel, crawl and climb. The claimant is not able [to] perform very complex, technical work, but is able to perform more than simple, routine, repetitive work, not

16

requiring constant, close attention to detail, or use of independent judgment. He needs occasional supervision and can work at a regular pace and a moderate level of stress.

(*Id.*)

The ALJ found his first hypothetical question to the VE "most closely approximate[d] the claimant's residual functional capacity," and was "consistent with the objective and subjective evidence of record." (*Id.*) Based on the VE's response to the hypothetical question, the ALJ concluded Combs is able to perform work that exists in significant numbers in the national economy, such as "inspector/hand packager, laundry folder or wire worker." (R. 23, 25 ¶ 11) Accordingly, he found Combs not to be disabled. (R. 23, 25 ¶ 13)

## III. DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

### A. Disability Determinations and the Burden of Proof

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Hillier v. Social Security*

17

*Admin.*, 486 F.3d 359___, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003. First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996).").

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

18

considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley*, 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon*, *supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in

19

significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

## B. The Substantial Evidence Standard

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir.

2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page*  484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline*, *supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord*

21

*Krogmeier*, 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075, 108 S. Ct. 1050, 98 L. Ed. 2d. 1012 (1988); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1)   the claimant's daily activities;
> 2)   the duration, frequency and intensity of the pain;
> 3)   precipitating and aggravating factors;

22

4)     dosage, effectiveness and side effects of
                                     medication;
                              5)     functional restrictions.

*Polaski*, 739 F.2d 1320, 1322 (8th Cir. 1984).  *Accord Ramirez v. Barnhart*, 292 F.3d
576, 580-81 (8th Cir. 2002).  The court must "defer to the ALJ's determinations regarding
the credibility of testimony, so long as they are supported by good reasons and substantial
evidence."  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).


                              *IV.  DISCUSSION*

       Combs argues the ALJ erred in posing a hypothetical question to the VE that did
not include all of Combs's limitations as supported by the record, and then in relying on
the VE's response to the insufficient hypothetical question.  Specifically, he argues the
ALJ should have included in the hypothetical question the limitations found by Dr. Barto
in her consultative examination.  Combs further argues the ALJ erred in finding his
subjective complaints not to be credible.  (*See* Doc. No. 20)

       The ALJ gave no weight to Dr. Barto's opinion that Combs "was virtually
unemployable due to his conditions," noting her opinion was "of the type not considered
to be a medical opinion entitled to deference," and the issue was "one reserved to the
Commissioner."  (R. 20, citing *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.
2002))  The ALJ observed that Dennis Weis, M.D., who did a paper review of the record
in March 2004, opined "Dr. Barto had apparently relied on the claimant's self statements
to opine that he was very limited in capacity due to his past surgeries and pain in giving
her limitations."  (R. 20)  Dr. Weis further stated Dr. Barto's "opinion was not supported
by a preponderance of the evidence," and her examination of Combs "was largely
unremarkable."  (R. 20)  Dr. Weis found Combs's credibility to be eroded by the fact that
he "had received no medical care other than the examination by Dr. Barto," and Combs
"was taking only aspirin for his symptoms."  (*Id.*)

                                      23

Although the ALJ was correct in noting the disability determination is reserved to the Commissioner, the court finds the ALJ erred in failing to identify clearly his reasons for discounting Dr. Barto's opinion regarding Combs's residual functional capacity. The regulations provide that in general, the Commissioner will give more weight to the opinion of a physician who actually has examined a claimant than to one who has only done a paper review of the record. 20 C.F.R. § 404.1527(d)(1). In this case, the ALJ gave greater weight to the opinion of Dr. Weis, who only did a paper review, than to Dr. Barto, who actually examined Combs. Standing alone, this would not constitute error because the ALJ agreed with Dr. Weis's finding that Dr. Barto's opinion regarding Combs's limitations was not consistent with the other objective medical evidence of record. However, at the time Dr. Weis performed his records review in March 2004, he did not have the benefit of Combs's full medical history that was available to the ALJ. The findings of Combs's treating physician, Dr. Reeder, in September 2004, support Dr. Barto's assessment of Combs's functional limitations. Dr. Reeder found objective evidence to substantiate Combs's allegations of low back and leg pain, and he prescribed Neurontin and Ultracet for pain. In addition, Combs continued to see a physician's assistant in Dr. Reeder's office in relation to his ongoing pain symptoms.

The ALJ failed to explain his assignment of controlling weight to Dr. Weis's paper review of the record when Dr. Weis's opinion was contrary to objective medical evidence from Comb's treating sources. Further, the ALJ erred in relying on the VE's response to a hypothetical question that did not include all of Combs's limitations as found by Dr. Barto. When Combs's attorney posed a hypothetical question to the VE that included those limitations, the VE found it unlikely, given the accumulation of Combs's limitations, that Combs would be able to maintain competitive employment.

The court also finds the ALJ failed to evaluate Combs's credibility adequately pursuant to *Polaski*. With regard to the first factor, Combs's daily activities, the ALJ

noted Combs drove daily, performed light household duties such as taking out the trash and washing the car, and performed self-care. The ALJ found these activities did not support Combs's allegations regarding his limitations. (R. 22) However, Combs's described daily activities are quite restricted in scope. Notably, "an SSI claimant need not prove that []he is bedridden or completely helpless to be found disabled and the fact that claimant cooks and cleans for [him]self, shops for groceries, does laundry, visits friends, attends church, and goes fishing does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity." *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)); *accord Curran-Kicksey v. Barnhart*, 315 F.3d 964, 971 (8th Cir. 2003) ("[T]his court repeatedly held that the activities to which the ALJ points do not support a finding that the claimant is able to do sedentary work in a[] competitive economy on a day-to-day basis.") (citing *Thomas, supra*; *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (noting that to be able to perform sedentary work, claimant must have "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world")).

With regard to the second *Polaski* factor – the duration, frequency, and intensity of pain – the court finds the ALJ failed to discredit Combs's allegations regarding his pain, and further, Combs's allegations are supported by the fact that his treating medical professionals prescribed pain medications for him. Even if the ALJ failed to take note of the objective medical evidence that supports Combs's allegations of pain, he could not base his denial of benefits solely on that point. *See Cline*, 939 F.2d at 566 ("[O]bjective medical evidence is not needed to support subjective testimonial evidence of pain and an ALJ may not base a denial of benefits solely on a lack of objective medical evidence.") (citing *Polaski*, 751 F.2d at 953; *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984)).

25

The court also finds the ALJ failed to consider adequately the effectiveness of Combs's medications. Despite taking prescription medications for pain, Combs testified he continues to have significant pain on a daily basis. There is no evidence in the record to refute this testimony. Indeed, Dr. Reeder considered a number of possible sources for Combs's ongoing pain, and he planned to order further diagnostic procedures.

Viewing the record as a whole, the undersigned finds the ALJ failed to explain adequately his evaluation of Combs's credibility, and he erred in giving great weight to the opinion of a records-reviewing physician when evidence from treating and examining physicians supported the opposite result. The court finds the record does not contain substantial evidence to support the ALJ's decision, but contains substantial evidence to support Combs's claim that he is disabled.

Having so found, it is necessary to determine whether Combs's alcoholism is a contributing factor material to the determination of disability. Because the ALJ made no finding of disability, he did not reach the analysis of whether Combs's alcoholism was material.[4] The undersigned finds no evidence in the record to support a conclusion that Combs's alcoholism is a contributing factor material to the disability determination. Combs's current physical impairments would not abate if he were to stop drinking altogether. (The same may not be true of his continued consumption of tobacco; however, the regulations do not require that type of determination.) Nevertheless, the required analysis is one that should be made by the Commissioner and not the court. *See* 20 C.F.R. § 404.1535 (stating if claimant is found to be disabled and medical evidence of alcoholism is present, "*we*" -- referring to "either the Social Security Administration or the State agency making the disability . . . determination," 20 C.F.R. § 404.1502 – *must determine* whether your . . . alcoholism is a contributing factor material to the determination of

_____

[4]However, with regard to Combs's claim that he is in constant pain, the ALJ did note the fact that Combs "has continued to drink, which is material in this matter." (R. 23)

disability") (emphasis added). As a result, this matter should be remanded for a finding that Combs is disabled, and for further consideration of whether his alcoholism is a contributing factor material to the disability determination. *Id.*

These findings return the court to consideration of the Commissioner's unopposed motion for remand. (Doc. No. 15) The Commissioner seeks remand for the purpose of allowing the Appeals Council to consider whether new and material evidence exists in connection with Combs's subsequent claim for benefits that may relate to the application at issue in this case. The motion should be granted for the purpose of allowing the Commissioner to review evidence submitted in support of Combs's subsequent application in connection with the determination of whether Combs's alcoholism is a contributing factor material to the disability determination.

## *IV. CONCLUSION*

For the reasons set forth above, **IT IS RESPECTFULLY RECOMMENDED**, for the reasons discussed above, unless any party files objections[5] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a finding that Combs is disabled, and for a determination as to

---

[5]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

whether or not Combs's alcoholism is a contributing factor material to the finding of disability.

**IT IS SO ORDERED.**

**DATED** this 4th day of September, 2007.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT